## HAWLEY v. HUNT.

1. **Bankruptcy:** FOREIGN STATE INSOLVENT LAWS: DISCHARGE UNDER. A discharge under a State insolvent law will not discharge a debt due to a citizen of another State, unless the latter appears and voluntarily submits to the jurisdiction of the court by becoming a party to the proceeding or claiming a dividend thereunder; and this is the case, irrespective of the form of the debt, of where the contract was entered into, or where it was to be performed.

2. —— The place of making or place of performance is wholly immaterial in all cases where the creditor is not a citizen of the State granting the discharge. Citizenship of the parties and not the place of the making, or the place fixed for the performance of, the contract, is the controlling element.

3. —— APPLICATION OF PRINCIPLES. Where judgments were rendered against a debtor in the State of New York, and these judgments were afterward assigned to a citizen of this State, it was *held*, that a subsequent discharge of the debtor under the insolvent laws of New York constituted no bar to a suit on the judgments.

4. —— VALIDITY OF STATE INSOLVENT LAWS. The doctrine recognized, that State insolvent laws are not invalid as respects subsequent contracts. The course of decision upon the principles herein announced shown, and the authorities collated, by DILLON, Ch. J.

*Appeal from Jackson District Court.*

FRIDAY, JUNE 18.

FOREIGN STATE INSOLVENT LAWS: DISCHARGE UNDER. The plaintiff sues on two judgments rendered against

the defendant in New York. The defense relied on is a discharge of the defendant under the insolvent law of that State. The validity of this defense is the controverted question. The facts relating thereto are these:

In 1854 two judgments were rendered against the defendant in the Supreme Court of Jefferson county, New York. The defendant was, at that time, a resident and citizen of that State. Those judgments (as would appear from copies of the complaint) were rendered upon promissory notes, executed by the defendant, respectively to one Pierce (who assigned the note to one Rulsion) and to one Thomas. Copies of the notes are not contained in the exemplifications of the New York judgments. Where the notes were executed does not otherwise appear, than that it is averred in the complaints in the actions in New York, that one of the notes was executed at "Denmark" and the other at "Gouveneur," but in what State is not alleged. Of what State Rulsion and Thomas, who recovered the judgments in New York against the defendant, were citizens does not appear.

As stated above, these judgments were rendered in 1854, against the defendant in New York. In 1856 the defendant removed from New York and became a resident of Iowa, and was a resident of Iowa at the time of the commencement of the present action, and at the time the judgment therein was rendered in his favor from which the plaintiff prosecutes the present appeal. In 1860 one of the judgments obtained in New York against the defendant was assigned by the judgment plaintiff to Hawley, the plaintiff in the present action, *then and now a resident and citizen of Iowa.* In 1861 the other judgment was likewise assigned to Hawley.

In 1862 Hawley commenced the present action, on the above mentioned judgments against the defendant, in the District Court of Jackson county, Iowa (defendant being

a resident of that county), and obtained personal service of process upon him. Defendant appeared, and in March, 1862, filed an answer, admitting the rendition of judgment against him in New York as alleged, and pleaded payment, etc. The cause was continued from time to time, until at length, in March, 1865, an amended answer was filed, in which the defendant alleged that " on the 3d day of August, 1863, he was duly discharged from all his debts under the statutes of the State of New York providing for the discharge of insolvents." A copy of the discharge is annexed to the answer. The certificate of discharge is dated on the 3d day of August, 1863, and the officer, after reciting the proceedings, declares that "he does hereby discharge the said insolvent from all his debts and from imprisonment, pursuant to the provisions of the statute."

The foregoing facts are uncontroverted. On the trial the plaintiff maintained that the defendant was not a resident of New York at the time he applied for and obtained a discharge under the insolvent law of that State. This the defendant denied, and on this issue both parties introduced evidence. The plaintiff proved by one Catlin that in the fall of 1862 the witness leased of the defendant's wife her house in Makoketa, Jackson county, Iowa, (the defendant doing all the business), for nine months, and surrendered it to them at the end of the term. Catlin states that Hunt gave as a reason for not renting it longer, that he thought he might want it himself at the end of that time. Mr. Wilbur and Mr. Lyman testified that the defendant, Hunt, was absent once from Makoketa, in 1862, '63, about eight or ten months, " on a visit to New York," as they understood ; from whom this understanding was had they did not state. With that exception Hunt had resided in Jackson county eight or ten years, and then resided there. Defendant testified that

he "moved to Makoketa, Iowa, in 1856, and that he had resided in this county ever since, except about nine months, when he was out of the State." He then proceeds to state that in the fall of 1862 they rented their house for nine months to Catlin; packed up most of their things and left them in one room of the house and went east to New York; that their son had written to them to come on and he would give them a homestead. Their little daughter died and they concluded to return to Iowa, his wife not being contented. He states that they went east with the intention of remaining there if every thing was right and they were satisfied with their home; that they were satisfied, but after the death of their little daughter they concluded to return; that they intended to fix their residence in New York if they were satisfied, and had done so, but the death of their little daughter made the wife dissatisfied, and they concluded to return to Iowa. He also says, that when he applied in New York for his discharge he was a citizen resident of that State, but he returned to Iowa before the discharge was issued, and it was forwarded to him by mail.

This was all the testimony. The cause was tried by the court, which found for the defendant. The plaintiff appealed. There was a former opinion in this case, affirming the judgment below on account of the defective state of the record. This affirmance, on the record being perfected, was set aside, and the cause argued on the merits by

*C. M. Dunbar* for the appellant.

*W. E. Leffingwell* for the appellee.

DILLON, Ch. J. — Respecting the validity of discharges

1. BANKRUPTCY: foreign State insolvent laws: discharge under.

under State insolvent laws, where the creditor is a non-resident of the State granting the discharge, there has been much discussion,

much conflict of opinion, and, until recently, much doubt. But, in view of the authoritative adjudications of the Supreme Court of the United States, presently to be referred to, and of the leading decisions of the State courts, cited below, the law, so far as relates to the present case, may be stated in a single sentence.

The settled doctrine now is, that a debt attends the person of the creditor, no matter in what State the debt originated or is made payable; that a creditor cannot be compelled by a State, of which he is not a citizen or resident, to become a party to insolvent proceedings therein; that such proceedings are judicial in their nature, so that jurisdiction over the person of the creditor is essential; that notice is requisite to jurisdiction in such cases, and can no more be given in insolvent proceedings than in personal actions, where the party to be notified resides out of the State, and hence a discharge under a State insolvent law will not and cannot discharge a debt due to a citizen of another State, unless the latter appears and voluntarily submits to the jurisdiction of the court by becoming a party to the proceeding, or claiming a dividend thereunder.

As direct authority for this statement of the law, we refer to the following decisions of the Supreme Court of the United States. *Baldwin* v. *Hale*, 1 Wallace, 223; 1863; S. C., 3 Am. Law Reg. (N. S.) 462, and note by Judge Redfield; *Ogden* v. *Saunders*, 12 Wheat. 213; *Boyle* v. *Zacharie*, 6 Pet. 348; *Cook* v. *Moffat*, 5 How. 310; *Suydam et al.* v. *Broadnax et al.*, 14 Pet. 75.

See, also, the following cases and authorities: *Donnelly* v. *Corbett*, 7 N. ,Y. (3 Seld.) 500; *Felch* v. *Bugbee*, 48 Maine, 9; S. C., 9 Am. Law Reg. (O. S.) 104; *Beers* v. *Rhea*, 5 Texas, 349; *Poe* v. *Duck*, 5 Md. 1; *Anderson* v. *Wheeler*, 25 Conn. 603; *Crow* v. *Coons*, 27 Mo. 512; *Pugh* v. *Bussel*, 2 Blackf. 394; *Beer* v. *Hooper*, 32 Miss.

246; *Woodhull* v. *Wagner*, Baldw. C. C. 300; *Byrd* v. *Badger*, 1 Mc All. C. C. 263; *Springer* v. *Foster*, 2 Story C. C. 387; 2 Story on Const. § 1390; Confl. Laws, § 341; 2 Kent Com. (9th ed.) 503; *Kelly* v. *Drury*, 9 Allen (Mass.), 27, 1864.

I have said that the settled law now is that a non-resident and non-assenting creditor is not bound by the debtor's discharge under State insolvent laws, no matter where the debt originated or was made payable. In other words the *citizenship* of the parties governs, and not the *place* where the contract was made, or where it is to be performed.

It is, perhaps, desirable to trace briefly the line of decis-
4. —— validity ion leading to and establishing the doctrine
of State insolv-
ent law.          as above stated.

Respecting State insolvent laws, the controlling constitutional provision is, that "no State shall pass any law impairing the obligation of contracts." "Any law," to use the language of Mr. WEBSTER in his argument in *Ogden* v. *Saunders* (6 Webs. Works, 26), "impairs the obligation of a contract *which discharges the obligation without fulfilling it.*"

In *Sturges* v. *Crouninshield* (4 Wheat. 122) the Supreme Court of the United States held such laws to be invalid as to pre-existing contracts. Subsequently the great case of *Ogden* v. *Saunders* (12 id. 213) came before the court. Respecting just what that case decided there has been much difference of opinion; but these differences have been set at rest by the recent decision in *Baldwin* v. *Hale*, before cited.

In *Ogden* v. *Saunders*, one point ruled or declared was that a State insolvent or bankrupt law was not a law impairing the obligation of contracts as respects debts contracted *after* the enactment of such law. This was upon the ground, largely if not wholly, that every con-

tract made in a State must be taken to have relation to the existing law of the State, which becomes, so to speak, part of it, attached to it and attendant upon it; and since the insolvent law declares a right on the part of the debtor to be discharged from contracts thereafter made on certain terms, whoever becomes interested in such contracts takes them subject to this right, and the exercise of such right cannot be said to impair the obligation of the contract. It was this point in the case which has been the cause of much controversy in the State courts. In his argument, Mr. WEBSTER combatted with great force the proposition "that the law itself was part of the contract, and, therefore, cannot impair it." 6th vol. Webs. Works, 29.

At present, however, we have no occasion to enter upon a discussion of this vexed proposition; the Supreme Court asserted that a State bankrupt law was not invalid as respects *subsequent* contracts. And the point ruled in *Ogden* v. *Saunders* was that a State insolvent law cannot affect the rights of creditors who are citizens of other States.

The second opinion of Mr. Justice JOHNSON (12 Wheat. 258), says Judge CURTIS, was concurred in on the general question, and settled the law involved therein. (On this point see also *Boyle* v. *Zacharie*, 6 Pet. 348, 643; *Cook* v. *Moffatt*, 5 How. 310; *Baldwin* v. *Hale*, *supra*, per CLIFFORD, J.)

The principle of the decision in *Ogden* v. *Saunders*, as stated by Mr. Justice JOHNSON is "that, as between citizens of the same State, a discharge of a bankrupt by the laws of that State is valid as it affects posterior contracts; *as against citizens of other States, it is invalid as to all contracts.*"

In *Cook* v. *Moffatt* (5 How. 309) the leading case of *Ogden* v. *Saunders* was reviewed, the soundness of many

of the reasons assigned in former opinions questioned, but the court held, among other points, that "a certificate of discharge under an insolvent law, will not bar an action brought by a citizen of another State on a contract made with him ;" that State insolvent laws "can have no effect on contracts made before their enactment, *or beyond their territory.*"

This language, it will be seen, is not free from uncertainty, and does not necessarily exclude the notion that if a contract is made originally between citizens of a State, and *is to be performed there*, and a non-resident subsequently becomes interested in or the owner of such contract (for example, a bill of exchange), he shall not be bound by a discharge granted in pursuance of a State law in existence at the time when the contract was made. The Supreme Court of Massachusetts, admitting its duty to follow what was *decided* on this subject by the Supreme Court of the United States, held that, even as between citizens of different States, a State insolvent discharge was effectual *in cases where it appears by the terms of the contract that it was made and to be performed in the State granting the discharge.* This was in *Scribner* v. *Fisher* (2 Gray, 43), Mr. Justice METCALF *dissenting*.

This decision was followed in other cases in that State, which, without re-argument, were rested upon it.

In *Demeritt* v. *Exchange Bank*, 10 Law Rep. 606 (March, 1858), Mr. Justice CURTIS, then of the Supreme Court of the United States, in express terms denied the correctness of *Scribner* v. *Fisher*, stating that it was in conflict with *Ogden* v. *Saunders* and *Boyle* v. *Zacharie*. "It is urged," says Judge CURTIS, "that where the contract is to *be performed in the State* it is not within *Ogden* v. *Saunders*. It has been so held in *Scribner* v. *Fisher* (2 Gray, 43). But I cannot concur in that opinion. I consider the settled rule to be that a State law cannot dis-

Hawley v. Hunt.

charge or suspend the obligation of a contract, though made and to be performed within the State when it is a contract with a citizen of another State."

In *Donnelly* v. *Corbett* (7 N. Y. [3 Seld.] 500, 1852) the Court of Appeals of New York; in *Felch* v. *Bugbee* (48 Me. 9; S. C., 9 Am. Law Reg. [O. S.] 104, 1860) the Supreme Judicial Court of Maine; in *Anderson* v. *Wheeler* (25 Conn. 607) the Supreme Court of Connecticut; and in *Doe* v. *Puck* (5 Md. 1) the Supreme Court of Maryland, and there are other similar decisions, decided that the distinction taken in *Scribner* v. *Fisher* was unsound, and that State insolvent laws had no extra territorial effect so as to operate upon the rights of citizens of other States.

But in *Baldwin* v. *Hale*, before cited, the Supreme Court of the United States, in 1863, in terms and by name, declared *Scribner* v. *Fisher* to be in conflict with the settled rule of that court. Mr. Justice CLIFFORD, after reviewing the prior decisions and stating the points ruled, says: "But a majority of the court held in *Scribner* v. *Fisher*, that, if the contract was to be performed in the State where the discharge was obtained, it was a good defense to an action on the contract, although the plaintiff was a citizen of another State and had not in any manner become a party to the proceedings. Irrespective of authority it would be difficult, if not impossible, to sanction that doctrine. Insolvent systems of every kind partake of the character of a judicial investigation. Parties, whose rights are to be affected, are entitled to be heard; and, in order to be heard, they must first be notified. Common justice requires that no man shall be condemned without notice and an opportunity to make his defense. Courts of one State have no power to require citizens of other States to become parties to insolvent proceedings. * * * Insolvent laws of one State cannot discharge

the contracts of citizens of other States, because they have no extra territorial operation, and consequently the tribunal sitting under them, unless in cases where a citizen of such other State voluntarily becomes a party to the proceeding, has no jurisdiction in the case. Legal notice cannot be given, and consequently there can be no obligation to appear, and of course there can be no legal default."

Independent of its authoritative force, this decision, and the grounds upon which it is placed, command unqualified approval.

Certain it is, that it is the final and settled doctrine of the Supreme Court of the United States, with respect to a question of which that tribunal is the ultimate arbiter.

Subsequently, the Supreme Court of Massachusetts, in *Kelly* v. *Drurg* (9 Allen, 27), following the decision in *Baldwin* v. *Hale*, itself, overruled *Scribner* v. *Fisher*.

The Supreme Court of the United States having thus settled that a citizen of another State cannot be affected by an insolvent discharge in the State in which the debtor resides, even though the contract was made, and on its face is to be performed therein, that principle settles this case, and shows that the judgment of the District Court was erroneous on the undisputed facts before it.

Those facts were that the judgments sued on were rendered against the defendant in New York; that he afterward removed to and became a citizen of Iowa; that plaintiff was likewise a citizen of Iowa; that both plaintiff and defendant were citizens of this State at the time when the judgments were assigned to the plaintiff, at the time the latter brought suit, and at the time the judgment was recovered which is now appealed from.

The discharge was no bar to the plaintiff's action, even though it be admitted that the defendant concluded to

remain in New York, and in good faith applied for his discharge as a citizen of that State.

The assignment of the judgments to the plaintiff made him the owner of them, and of the debt of which they were the record evidence. He was as much the owner as if they had been recovered in his name. Our statute recognizes the plaintiff as the owner, and allows him to sue thereon in his own name. The defendant had notice of the assignment. He owed the debt, and owed it to the plaintiff. He could not afterward pay to the assignor, or to any person but the plaintiff.

Both parties *being citizens of Iowa*, and the plaintiff having actually brought suit in Iowa to collect his debt, the plaintiff, though suing upon a New York judgment, was an Iowa creditor, and the defendant would have no more right as against the plaintiff, subsequently and pending the action, to remove to New York, acquire a discharge which should be valid as against the plaintiff's action in Iowa, than if the defendant had never previously resided in New York, or had, while residing there, made the contract with the plaintiff, at the time a resident of Iowa.

I need not stop to point out the injustice and unreasonableness of holding that a debtor, pending an action against him, may change his residence, obtain an *ex parte* discharge, resume his residence in the State in which his creditor resides, and then be allowed to plead such discharge as an effectual bar to the plaintiff's action.

The court of no State could, in justice to its citizens, ever give its sanction to such a doctrine, unless it conceived that it was so bound by authority that it could not unloose itself from its grasp.

The court below undoubtedly proceeded upon the idea of the Supreme Court of Massachusetts, in *Scribner* v. *Fisher*, and counsel undoubtedly did not call its attention

to the case of *Baldwin* v. *Hale*, since it is not referred to in their briefs in this court.

It was suggested on the argument that the Court of New York would have control over judgments rendered in that State, and that the case was, or might be, different from what it would if the contracts on which the judgments were rendered had been transferred to the plaintiff, a resident of Iowa, and had never been reduced to judgment in New York.

The decisions in this court (*Burtis* v. *Cook & Sargent*, 16 Iowa, 194) treat a judgment rendered as a chose in action. It is a debt, or the record evidence of a debt. The plaintiff, as the assignee, has the same rights as if he had, while a citizen of Iowa, recovered judgment in his own name, in New York. In that case it is plain that it could not be discharged against his assent, by a State insolvent proceeding. This suggestion comes right back to the point before discussed, and which has been finally set at rest by *Baldwin* v. *Hale*, viz. : that, if the creditor is a non-resident of the State, a discharge under a State law cannot affect him unless he voluntarily becomes a party to the proceeding, and this is the case, irrespective of where the contract was entered into or was to be performed.

Place of making or place of performance is utterly immaterial in all cases where the creditor is not a citizen of the State, granting the discharge.

*Citizenship* of the parties, and not the *place* of the making or the place fixed for the performance of the contract, is the controlling element.

As the plaintiff was undoubtedly a citizen of Iowa at the time the defendant obtained his discharge in New York, it is not necessary to decide the question so ably debated by counsel, whether the defendant did in fact acquire a residence in New York at the time he applied for relief under its insolvent laws.

To my mind this is doubtful, but, as the evidence is conflicting and by no means decisive, we ought not, on this ground, to disturb the judgment of his Honor below. This has made it necessary to dispose of the case on the assumption that the defendant was not a citizen of Iowa, but was a citizen of New York when he applied for his discharge.

Reversed.