Argued at Pendleton May 8; affirmed June 18, 1935.

# STERRETT *v.* STODDARD LUMBER CO.
## (46 P. (2d) 1023)

*Harold Banta,* of Baker (Hallock, Donald & Banta, of Baker, on the brief), for appellant.

*A. A. Smith,* of Baker (Heilner, Smith, Grant & Fuchs, of Baker, on the brief), for respondent.

BEAN, J. The Stoddard Lumber Company, an Oregon corporation, was engaged in manufacturing and selling lumber at Baker, Oregon, in the year 1930. Its principal office was at Baker, Oregon, and its credit manager resided there; the bookkeeping and accounting department was at Ogden, Utah. During that year it accepted, at its Baker office, orders for the sale of lumber in the sum of $1,908.70, to the C. C. Woodall Company, Inc., a Washington corporation, which was engaged in business at Yakima, Washington. Application for appointment of a receiver for the corporation was made on October 7, 1931. On October 13, 1931, Floyd B. Sterrett was appointed receiver by order of the superior court of the state of Washington for Yakima county. Therefore, plaintiff states that the company became insolvent on October 13, 1931. This case was commenced April 12, 1932, more than six months after the application was filed. That company issued its trade acceptance, due January 3, 1931. Prior to the due date an extension was granted to March 3, 1931. On March 6, 1931, the Stoddard Lumber Company received at its office at Baker, Oregon, a check from the C. C. Woodall Company in the sum of $250, drawn on the

First National Bank at Zillah, Washington. The check was deposited by the Stoddard Lumber Company to its credit in the First National Bank of Ogden, Utah. In due course, and on March 10, 1931, the check reached the First National Bank at Zillah, Washington, and that bank then stamped by perforation the check as paid. At the time the check was received by the defendant a new trade acceptance was prepared and executed by the C. C. Woodall Company covering the balance of the account. On June 5, 1931, the Stoddard Lumber Company received at its Baker office another check in the sum of $200 from the C. C. Woodall Company. That check was likewise deposited in the First National Bank of Ogden, Utah, and in due course, and on June 16, 1931, reached the First National Bank at Zillah, Washington, and on that date that bank stamped the check by perforations as paid.

Plaintiff asserts that the trade acceptances were payable in Washington. Defendant contends that the evidence does not support this statement. Plaintiff was unable to produce the first original trade acceptance, and defendant was unable to produce the last one. A copy of one of the trade acceptances was, however, produced by plaintiff, and this showed the place of payment blank.

There is no allegation in the plaintiff's complaint, nor any evidence in the case, that at the time the payments were received by defendant at its office at Baker, Oregon, it had any knowledge or reason to believe that the C. C. Woodall Company was insolvent, nor is there any claim on the part of plaintiff that this defendant had any such knowledge at the time such payments were made. After the first payment the first trade acceptance was taken up and a new acceptance issued. It is alleged and asserted by plaintiff that these

two payments were made to the Stoddard Lumber Company on the account while the C. C. Woodall Company was insolvent. Plaintiff, as receiver of the insolvent corporation, brings this action to recover back the payments as preferences under the Washington trust fund doctrine. The trust fund doctrine of the state of Washington, as interpreted by the courts of that state, declares all payments made by a corporation, in fact insolvent, preferences even though the recipient has no knowledge or cause to believe the corporation is insolvent.

The plaintiff alleges that during all the times herein mentioned, and particularly at the time of the sale of the merchandise and the making of the payments mentioned, it was the law of the state of Washington, as evidenced by a long line of decisions of the supreme court, and the court of last resort of said state, that an insolvent corporation may not prefer its creditors; that although an individual creditor may do so, even to the exhaustion of its property, the right does not exist in a corporation; that its property, on insolvency, becomes a trust fund for the benefit of all its creditors, to be equally and ratably distributed among them; that if a corporation, being insolvent, did prefer one of its creditors over another, that the receiver or trustee of said insolvent corporation could recover back such preference for the benefit of the creditors thereof to be later distributed among them ratably; that it is further the law of the state of Washington, as evidenced by said decisions, that in an action or suit on the part of the receiver to recover such an unlawful preference, it is not necessary that he show that the creditor at the time of receiving the preference had knowledge or reasonable cause to believe that the corporation was insolvent, but it is sufficient, in order to sustain such a

recovery, that it be shown that the corporation was insolvent at the time the payment was made.

It is alleged in defendant's answer that on March 9, 1931, the legislature of the state of Washington duly and regularly passed a law, chapter 47 of the session laws of the state of Washington, at its regular session in the year 1931, relating to insolvent corporations, defining preferences and limiting the time in which actions for preferences should be commenced. Said law provides as follows:

"Chapter 47. Preferences of insolvent corporations. An Act relating to insolvent corporations, defining preferences, providing for offsets, and limiting the time in which actions for preferences may be commenced.

"Section 1. Actions in the courts of this state by a trustee, receiver or other liquidating officer of an insolvent corporation, to recover a preference as herein defined may be commenced at any time within six months from the time of the filing of the application for the appointment of such trustee, receiver or other liquidating officer.

"Section 2. a. A corporation shall be deemed to have given a preference if, being insolvent, it has, within four months before the filing of an application for the appointment of a trustee, receiver, or other liquidating officer of such corporation, procured or suffered a judgment to be entered against itself in favor of any person, or made a transfer of any of its property, and the effect of the enforcement of such judgment or transfer will be to enable any one of the creditors of said insolvent corporation to obtain a greater percentage of his debt than any other of such creditors of the same class."

By section 2, subdivision b, of chapter 47, in order for the receiver to recover a preference for payments made prior to the four-months' period from the time of filing an application for the appointment of a receiver, the receiver is required to show that the creditor had

knowledge or reason to believe that the corporation was insolvent. By the act, the receiver is also required to commence action for the recovery of any preference within six months from the time the application was filed for his appointment. The substantive law was not changed. What the supreme court had previously said was the law of the state of Washington was simply written upon the statute books of the state, with the limitations mentioned. This law went into effect on June 10, 1931. This action was commenced by the plaintiff, without authority of the court of the state of Washington, and without authority or permission from the courts of this state.

The lower court, after holding that the transactions involved were Oregon, and not Washington, transactions, and that even if governed by the Washington law, the action was not commenced within the limitations imposed by the law of that state, held that the plaintiff was not entitled to recover and dismissed the action.

It is not alleged in the complaint in this case, nor is there any proof, that there is any title in the plaintiff, other than the order of appointment of himself as receiver by the courts of the state of Washington. Plaintiff Floyd B. Sterrett, who was so appointed, is without title to the assets, property or rights of any kind within the state of Oregon belonging to or in which the C. C. Woodall Company, Inc., has or claims an interest, and therefore has no right to maintain the present action. A court appointing a receiver cannot give such receiver authority to act in another state without the assistance of the courts thereof. The receiver's power extends no further than that of the court appointing him and cannot be asserted as a matter of right beyond the territorial jurisdiction of such court:

Clark on Receivers, 431, § 318; 53 C. J. 391, § 637; *Olney v. Tanner,* 10 Fed. 101, 105; *Sterrett v. Second Nat. Bank,* 246 Fed. 753 (3 A. L. R. 256) (see annot. 3 A. L. R. 263); *Hayward v. Leeson,* 176 Mass. 310 (57 N. E. 656, 49 L. R. A. 725); *Lion Bonding & S. Co. v. Karatz,* 262 U. S. 77 (67 L. Ed. 871, 43 S. Ct. 480). This rule is stated in 53 C. J. 391, § 637, as follows:

"Although foreign receivers lack the power to enforce extraterritorial rights, they may by comity be given the privilege of doing so. But extraterritorial recognition will not be extended in contravention of the public policy of the forum, nor to the detriment of its citizens or the prejudice of resident creditors."

Clark on Receivers, 431, § 318, states the rule thus:

"A decree appointing a receiver, therefore, in one state will not of itself bind property in another state. The only way the receiver of one state can get the custody or title of property in another state is by conveyance by the defendant to the receiver or by the receiver going to the other state and being appointed by the courts of that state ancillary receiver of property of the defendant in that state."

In *Olney v. Tanner,* supra, an action by a receiver, the court, discussing the question of title, as shown on page 105, said:

"Towards the close of the opinion [Booth v. Clarke] it is intimated that if the receiver's title had rested, not merely upon the law or practice of the local courts in the collection of debts, but upon an actual assignment of the claim by the debtor himself, prior to the bankruptcy, by some instrument universally recognized as passing a title to property, the decision might then have been different. * * * This distinction would not benefit the complainant in this case, as no such assignment has ever been made to him. The plaintiff here has no right or title of his own; he is a mere officer of another court, seeking, through a judgment to be ob-

tained in this, an independent tribunal, to enforce and make available certain proceedings, *in invitum* against the judgment debtor in another jurisdiction, * * *."

■ The law of the state of Washington in respect to receivers has not been pleaded. Therefore, it will be presumed the law of that state in respect to receivers is the same as the common law or the Oregon statute declaratory thereof, if any: *Garetson Lbr. Co. v. Hinson,* 69 Or. 605 (140 P. 633); *Casner v. Hoskins,* 64 Or. 254 (128 P. 841, 130 P. 55).

The legislature of the state of Washington codified the trust fund doctrine, which had been maintained by the courts for a long time, by the enactment of chapter 47, Laws of 1931, and provided that the preferential nature of payments made by insolvent corporations would apply only to those payments made within four months of the time that application was made to appoint a receiver. To recover payments made more than four months prior to such time, the receiver would be required to show that the recipient of such payments knew, or had reason to believe, that the corporation was insolvent. It is admitted that the payments involved in this case were made more than four months prior to the time that the application for the appointment of a receiver was filed.

Plaintiff relies on the case of *Sterrett v. White Pine Sash Company,* 176 Wash. 663 (30 P. (2d) 665). It is stated in that case by Mr. Justice Main that by chapter 47, Laws of 1931, the legislature confirmed the trust fund theory theretofore adopted by the court, but limited its operation to a certain extent, so that, except for the limitations, we think the statute makes the same provisions as contained in the trust fund doctrine prior to the enactment.

Section 2 of the act, it will be noticed, provides that corporations shall be deemed to have given a preference if, being insolvent, it has, within four months before the filing of an application for the appointment of a receiver, transferred any of its property, and the effect of such transfer would be "to enable any one of the creditors of said insolvent corporation to obtain a greater percentage of his debt than any other of such creditors of the same class". The quoted portion of the statute, which, as we have noticed, is in consonance with the trust fund doctrine existing prior to the enactment, does not seem to have been given any attention by plaintiff in this case.

It is clear from the language of the Washington opinion (*Sterrett v. White Pine Sash Company,* supra) that a retroactive effect would not be given to the statute where it would limit the right of action or impair an existing right.

The Stoddard Lumber Company, in good faith, sold its lumber to the C. C. Woodall Company at Baker, Oregon. In evidence of the indebtedness created by such sale, the C. C. Woodall Company executed its trade acceptances. For one of these it made a payment of $250 by check on March 6, 1931; upon another it made a payment of $200 by check on June 5, 1931. There is no suggestion that at the time these checks were received the Stoddard Lumber Company knew, or had any reason to believe, the C. C. Woodall Company was insolvent, or that it had any knowledge of the affairs of the C. C. Woodall Company, or any opportunity of acquainting itself in any manner with the financial condition of that company. Its acts are conceded to be in good faith and of the highest character.

It is contended on the part of defendant that the facts of the case will not warrant a recovery under any

theory of the law. As noted above, the Washington act provides for recovery of a preference, or, rather, defines a preference, where there is a transfer of any property and the effect of such transfer would be to enable one of the creditors to obtain a greater percentage of his debt than any other of the creditors of the same class. There is no allegation that the sum of $450, the amount paid by the C. C. Woodall Company to the defendant, would be a greater percentage than would be received by the other creditors. The complaint simply alleges that under the laws of the state of Washington the payments constituted, and were, preferential payments made by an insolvent corporation. It does not allege the amount of the assets the C. C. Woodall Company had at the time or what percentage it would pay or be likely to pay on its indebtedness. The testimony indicates, by a balance sheet dated February 23, 1931, admitted in evidence upon a stipulation and showing in detail the assets and liabilities of that company as of that date, which is all the testimony pertaining to the matter, that the C. C. Woodall Company at that time had a total net worth of $9,061.62. It is stipulated that Floyd B. Sterrett, if he were called as a witness, would testify that the financial affairs of the C. C. Woodall Company became steadily worse from and after the date of said statement, until the final closing of the business of said company through the appointment of the receiver; it is further stipulated that during the time said checks were written and paid said C. C. Woodall Company was actively engaged in carrying on its regular business, and continued carrying on its regular business until it went into the hands of a receiver on October 13, 1931.

 A foreign receiver will not be permitted to enforce any right which is in contravention of the public

policy of the forum, nor to the detriment of its citizens or the prejudice of resident creditors. A foreign receiver will not be recognized for the purpose of enforcing foreign laws as against creditors or other citizens who have fairly acquired rights and property opposed to such laws: *Egan v. North American Loan Co.,* 45 Or. 131 (76 P. 774, 77 P. 392); *Thum v. Pingree,* 21 Utah, 348 (61 P. 18, 19); *Ward v. Pac. Mutual Life Ins. Co.,* 135 Cal. 235 (67 P. 124); *Barclay v. Quicksilver Mining Co.,* 6 Lans. (N. Y.) 25; *Olney v. Tanner,* supra.

Counsel for plaintiff, referring to the Washington statute, reply that "this was *not* a statute providing a limitation for *existing causes of action.* It defined *new rights* and provided limitation for their enforcement. The 1931 act provides a limitation for suits to recover preferences *'as herein defined,'* not as they existed prior thereto". This contention is not in harmony with Mr. Justice Main's statement in the White Pine Sash Company case that "the legislature confirmed the trust fund theory heretofore adopted by this court, but limited its operation to a certain extent".

The allegation of plaintiff's complaint setting forth the trust fund doctrine, prevailing in the state of Washington prior to the statutory enactment, shows that it was in effect the same as the statute as to the provision that the property of an insolvent corporation becomes a trust fund for the benefit of all its creditors, to be equally and ratably distributed among them, and that if a corporation, being insolvent, did prefer one of its creditors over another, the receiver or trustee of said insolvent corporation could recover back such preference for the benefit of the creditors thereof, to be later distributed among them ratably. This is to the same effect, we think, as the provisions of the statute.

■ Neither the pleadings on the part of defendant, nor the testimony in this case, brings the same within the provisions of the Washington law by showing that the defendant did receive a greater percentage than other creditors. It is conceded, as we understand, that under the laws of the state of Oregon the plaintiff could not recover, as the payments were received in good faith, and there was no fraud on the part of defendant.

■■ Plaintiff asserts that the business was a Washington transaction. It appears from the record that the lumber was manufactured and sold at Baker. The trade acceptance, of which a copy of one is in the record, was dated at Baker, by the acceptance of which the C. C. Woodall Company pledged itself to pay for the goods to the order of the Stoddard Lumber Company.

It is stated in 8 C. J. 87, § 145, as follows:

"The general rule is that the law of the place where the instrument was executed and delivered so as to become binding as a contract, that is, the law of the place where the contract was made, or the lex loci contractus, as it is frequently called, governs the rights and liabilities of the parties thereto, except in so far as they are controlled by the law of the place where the instrument is payable, unless the intention to make the law of some other place govern is manifest * * *. If no place of payment is designated, the instrument is governed by the law of the place where the contract was made, subject to the exceptions just noted."

It is further stated there, in substance, that this rule that the place where the contract is made governs, except that generally it is controlled by the law of the place of payment, is applicable in determining the validity of the instrument, the effect to be given to the contract, the original obligations of the parties, and generally the nature of the contract. The interpretation of the instrument is in like manner referred to the law

of the place where it is made, especially where no place of payment is expressed. In determining whether the negotiable instrument law applies, or the law merchant, the law which governs is that of the state where the contract was made and is to be performed. It is sometimes difficult to determine where the contract was made, as a matter of law, in applying the rule that the law of the place of contract governs. It is not necessarily the place where the instrument is dated, nor the place where it is signed, although such place may be and generally is the place where the contract is made: 8 C. J. 88, § 147. The contract may be dated in one place, signed in another, and delivered in a third, but the place of date is prima facie the place of contract, where the place of delivery does not appear, and where there are no other controlling circumstances: 8 C. J. 88, § 148.

About all we have in the present case is the acceptance dated at Baker, except the general transaction of the business. It is impossible to lay down any general rule applicable in all cases as to what law governs, or where the contract is made, where the instrument is sent by mail. The intention is always the governing element. Where the notes are renewal notes and the payee under the circumstances could have refused to accept them and have retained the old ones, the delivery is not complete, where the new notes are sent by mail, until received and accepted by the payee, and where the delivery is by a private messenger who was the maker's agent, the law of the place of receiving governs: 8 C. J. 90, § 151. In general, the place of performance of a bill or note, that is, the lex loci solutionis, is the place of payment. Where a bill or note is executed in one state and made payable in another, the general rule is that it is governed as to its nature, validity, interpretation and effect, by the law of the state or country in which it is

payable, without regard to the place where it was written, signed or dated, unless it clearly appears that the parties intended the contract should be governed by the law of the place where it was made: 8 C. J. 92, § 153. In section 154, of 8 C. J., it is said that where no place of payment is expressed, bills and notes are presumed to be made payable at the place of date, at least if it is the same place as the place of execution. And we find, by section 157, a note made in the state where suit is brought, and payable generally, is governed by the laws of such state and not by those of a different state in which the consideration arose. In the present case the consideration arose in the state of Oregon, and, under all of the circumstances, we think the debt, evidenced by the trade acceptances, is payable at Baker, in the state of Oregon. While the circumstances may have required the Stoddard Lumber Company to send letters to Zillah, Washington, in order to collect the pay for the lumber, it is presumed that it was not compelled to do so, and it is further presumed that the C. C. Woodall Company would pay the Stoddard Lumber Company, for the merchandise which it purchased, at Baker, Oregon.

In 4 Words and Phrases (Third Series) 864, it is said:

" 'Lex loci contractus' is place of acceptance, as where resident of one state places letter in mail, making offer to one residing in another state, contract is completed and lex loci contractus is place where acceptance is mailed." Citing *County Sav. Bank v. Jacobson,* 202 Iowa 1263 (211 N. W. 864, 866).

■ It has never been better described than it was incidentally by Chief Justice Marshall in *Wayman v. Southard,* 23 U. S. (10 Wheat.) 1, 48 (6 L. Ed. 253), where he defined it as a principle of universal law, as

follows: "the principle that in every forum a contract is governed by the law with a view to which it was made." See 5 Words and Phrases (First Series) 4109.

We fail to see that the fact that the C. C. Woodall Company gave defendant two checks on the Zillah, Washington, bank would change the rule in regard to the place of contract. We think the purchase of the lumber and the payments therefor, involved herein, were Oregon transactions and are governed by the laws of the state of Oregon: *Hawley v. Hunt,* 27 Iowa, 303 (1 Am. Rep. 273); *McFadden v. Follrath,* 114 Minn. 85 (130 N. W. 542, 37 L. R. A. (N.·S.) 201, 204). In 48 C. J. 592, § 8, the rule is stated as follows:

"As a general rule * * * a debt is payable at the place where the creditor resides, or at his place of business, if he has one, * * * and it is ordinarily the duty of the debtor to seek the creditor for the purpose of making payment, * * *."

In the case of *Hawley v. Hunt,* supra, it is stated:

"The settled doctrine now is, that a debt attends the person of the creditor, no matter in what state the debt originated or is made payable; * * *"

Defendant contends that under the Washington statute actions to recover payments made by insolvent corporations to creditors shall be commenced within six months from the time of the filing of an application for the appointment of a receiver. Plaintiff maintains that this cause of action arose before the enactment of that statute, and that the same does not apply. We do not deem it necessary to consider this question in this case.

It follows that the judgment of the circuit court will be affirmed. It is so ordered.

CAMPBELL, C. J., not sitting.