F. C. OKEY, Appellant, v. R. O. BARGENHOLT, Appellee.

No. 46708.

JUNE 19, 1945.

Lee R. Watts and H. J. Kittleman, both of Corning, for appellant.

Thos. E. Mullin, of Creston, for appellee.

SMITH, J.—The sole issue here concerns the place of contract. It is conceded in argument that if the note sued on was a Colorado contract it is barred by the statute of limitations of that state. The factual evidence is not seriously in dispute. The controversy grows almost entirely out of the conflicting inferences drawn by the parties from the meager facts shown.

The note was dated, "Corning, Iowa, Aug. 21, 1919," and was payable sixty days after date to the order of plaintiff "at the Okey Vernon National Bank, Corning, Iowa." Plaintiff and his brother, Ed Okey, operated the bank at that time.

Defendant left Corning in 1918 and became a resident of Colorado, where he lived until 1930. Later he removed to El Paso, Texas, where he lived at the time of trial. He knew the Okey brothers and testified he visited plaintiff at the bank in 1930 on the occasion of his (defendant's) father's death. After he left Iowa his mother continued to live in Adams county.

Plaintiff and defendant were the only witnesses. Both were called on behalf of defendant. Neither gave a very clear picture of the transaction. Defendant at the time worked for the Burlington Railroad Company that operated a branch line in Nebraska from Alliance to Bridgeport, about thirty-five miles distant from each other. His home, however, was Sterling, Colorado.

On August 21, 1919, while in Bridgeport and being "a little short of change," he drew a check on plaintiff's bank for $65, payable to the order of Bridgeport Bank, and cashed it. He had no deposit account in plaintiff's bank. The same day he wrote a letter to Ed Okey (plaintiff's brother) on the stationery of a hotel at Alliance, Nebraska, in which he said:

"I gave a check today for $65.00 *today* I got an option on house & lot at Bridgeport till I see if I can sell there. you pay this and I am sending note to cover this with mother as security so you know you are not going to *loose*."

The letter had a postscript:

"if this isn't OK let me know.by return mail and will try and obtain the money & send but didn't want to borrow here now."

The record does not show whether a note was enclosed or that Ed Okey ever answered the letter. Plaintiff testified that when the check came through to his bank for collection he (plaintiff) took it up with his own personal funds. He does not say whether he saw or relied on the letter to his brother Ed. He did not expressly say he sent the note to defendant for signature but implied he did so:

· "I don't know when I sent him the note to be signed, but ordinarily when we furnish money we date it the date of the note the date of the check."

He declined to say he did not have the note when the check came in ("I didn't say that because I don't know") or that he later sent the note for signature. He does say:

"I received the note through the mail. I don't know when I received the note, but I have the note and have the check for the money that I put up on the check, and I was to have Mrs. Teresa P. Bargenholt on the note and I never succeeded in getting it."

He does not say he or anyone ever asked defendant's mother to sign the note.

At one place in his testimony plaintiff says:

"The note came from Bridgeport and I made the notation on the stub there and just before it was due I dropped him a line there."

Defendant testified he first saw the note at Sterling, Colorado:

"The note was sent to me through the mail. Mr. Okey sent it. I signed it and sent it back to him. I was in Sterling, Colorado. I sent it by United States mail to Mr. Cliff Okey. It was signed by me in Colorado."

He says it was possibly ten days after the check was written.

He admitted that he wrote the letter to Ed Okey (quoted above) but did not say whether he ever received a reply. He made no explanation of the possible implication in the letter that he was enclosing, or would furnish, a note "with mother as security." He definitely denied any recollection that his mother was to sign the note in suit. And closed his testimony with the statement:

"I did not write Mr. Ed Okey about this check before I wrote the check or signed the note. I didn't have any correspondence about Exhibit 2 [the check] until after the same was written."

On this record the trial court concluded as a matter of law that the note sued on represented a Colorado contract, barred under the Colorado statute, and directed a verdict for defendant.

By stipulation as to the limitation statute of Colorado, and concession in argument as to its applicability here, "if it is a Colorado contract," we are saved a discussion of section 11014, Iowa Code, 1939.

We are of the opinion the letter of defendant to Ed Okey, bearing the same date as the date of the check and referring to a note being sent, with his mother as security, may be disregarded as having no material bearing on the question here. It merely indicates that defendant drew the check without any previous arrangement with or permission by the bank. There is no showing that Ed Okey or this letter to him had any connection with plaintiff's act in taking up the check or with the execution of the note.

While the evidence is not clear as might be desired, the pertinent facts are fairly discernible. Defendant drew and cashed the check at Bridgeport, Nebraska, upon the bank in Corning, Iowa. Plaintiff voluntarily intercepted it and paid it out of his own funds. He then by mail sent defendant the note, which defendant received in Sterling, Colorado. *There is no evidence that he instructed defendant to return it by mail.* Defendant signed the note in Sterling and sent it to

plaintiff by mail. The action here is brought on the note and not on any indebtedness claimed to have arisen by virtue of plaintiff's voluntary taking up of defendant's check.

Unless we are to overrule or ignore our decision in In re Estate of Young, 208 Iowa 1261, 226 N. W. 137, we must hold this note, under the record as it stands, to be an Iowa contract. That case is not distinguishable from the instant one. Justice Albert, who wrote the opinion, fortifies it by citation of authorities that amply sustain it if they are to be followed. He frankly concedes there may have been some authority to the contrary (see, e.g., Barrett v. Dodge, 16 R. I. 740, 19 A. 530, 27 Am. St. Rep. 777) but holds the general rule to be as stated in the opinion and adopts it as the rule in this state.

Defendant cites Tharp v. Thero, 112 Iowa 573, 575, 84 N. W. 709, 710, but it is not in point except that it involved an action by an Iowa plaintiff upon a note of a nonresident of Iowa, which had been signed by defendant in Colorado and mailed to plaintiff. There was a judgment for plaintiff and defendant appealed. The case was reversed because of error in refusing to permit defendant to show plaintiff's intent in regard to method of delivery of the note. On cross-examination of plaintiff he was asked if he expected the note would come by mail and if he expected defendant to "come back and bring them." The trial court sustained objections to both questions. These rulings were held to be reversible error.

The opinion says:

"If the defendant deposited it in the postoffice in Idaho Springs, Colo., with the intent to have it transmitted to the plaintiff without further action on his part, and intended such deposit as a delivery to him, it would undoubtedly be a good and complete delivery, if the plaintiff agreed, either expressly or impliedly, that it might be so sent to him. Hence we think the evidence was competent and material."

That is not contrary to the doctrine announced by the Young case, supra.

In the instant case no effort was made to show the intent of the parties as to mode of delivery of the note, or any direction by plaintiff to defendant in that regard.

In Jarl v. Pritchett, 190 Iowa 1268, 179 N. W. 945, also cited by defendant, the note in question was not only signed in the foreign state but also personally delivered there to plaintiff's agent, who mailed it back to plaintiff in Iowa.

Defendant cites Martin v. Martin, 205 Iowa 209, 217 N. W. 818, but in that case plaintiff sued on a renewal note that was not claimed to have been executed in Iowa. It superseded an original Iowa note but we held it became a new contract and that the suit was upon it and not on the "original indebtedness."

Both parties cite Acme Feeds, Inc. v. Berg, 231 Iowa 1271, 4 N. W. 2d 450. We find nothing in that case contrary to our holding in In re Estate of Young, supra. In fact, we agree with the statement in the latter that the question involved there had never been decided in Iowa. There seems to be no later case that casts any doubt on the soundness of the decision in the Young case and we are of the opinion the rule announced in it must be applied here. 10 C. J. S., Bills and Notes, section 78d.

There are, of course, cases involving contracts entered into by offer and acceptance evidenced by correspondence in which the rule seems to be that where an offer is made by letter, authority to respond by the same medium may be implied. In such case it is held that the mailing of the letter of acceptance may constitute a completion of the contract and fix the place of contract. See International Trans. Assn. v. Des Moines Morris Plan Co., 215 Iowa 268, 245 N. W. 244, and cases cited.

But such cases should be distinguished from one in which the payee in a note draws the instrument, dates it, and makes it payable at the place of his own residence, and mails it to the maker in another state to sign and return. We are of opinion that in the latter case the trier of fact might well infer an intention of the parties to make it a contract of the state in which it is made payable. In fact, it is generally held that the parties contract with reference to the law of the place of payment unless it clearly appears that they intended otherwise. 8 C. J., Bills and Notes, section 153; 10 C. J. S., Bills and Notes, section 49; Farm Mortgage & Loan Co. v. Beale, 113 Neb. 293, 202 N. W. 877; Sterrett v. Stoddard Lbr. Co., 150 Or. 491, 46 P. 2d 1023, 1028; Commercial Credit Corp. v. Boyko, 103 N. J. Law 620, 137 A. 534.

Defendant here is relying on the affirmative defense. The burden is upon him to establish it. No presumption or inference arises to aid him. The note is dated and made payable at Corning, Iowa, and there is no evidence upon which it can be said as a matter of law that the cause of action did not arise in Iowa. Under the record as it stands we think it was error to direct verdict for defendant.—Reversed.

All JUSTICES concur.