43 N.J. Super. 323 (1957)
128 A.2d 514
MARYLAND CASUALTY COMPANY, A CORPORATION OF THE STATE OF MARYLAND, PLAINTIFF,
v.
NEW JERSEY MANUFACTURERS CASUALTY INSURANCE CO., WILLIAM H. BAIR TRUCKING COMPANY, HORACE KELLY, SOUTH JERSEY PORT COMMISSION, OPERATING CAMDEN MARINE TERMINAL AND WILLIAM CHERRY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 9, 1957.
*324 Messrs. Starr, Summerill & Davis, attorneys for plaintiff.
Messrs. Orlando, Kisselman & Devine, attorneys for defendants New Jersey Manufacturers Casualty Insurance Co. and William H. Bair Trucking Company.
Messrs. Hermann, Melnik and Lowengrub, attorneys for defendant William Cherry.
MARTINO, J.C.C. (temporarily assigned).
This is an action by the plaintiff Maryland Casualty Company seeking reimbursement by way of indemnification or, in the alternative, contribution from the defendant New Jersey Manufacturers Casualty Insurance Co. The action arises from an accident which occurred on March 2, 1952 at the Camden Marine Terminal, operated by the South Jersey Port Commission, in which accident one Horace Kelly, an employee of William H. Bair Trucking Company, suffered injuries for which he filed an action in the Superior Court of New Jersey, Law Division, against William Cherry and South Jersey Port Commission, made defendants in this action, wherein he alleged that his bodily injuries were caused by the negligence of William Cherry, and further asserted that the South Jersey Port Commission was liable for the negligence of William Cherry, as its servant and agent. The South Jersey Port Commission, at that time, was insured against loss by reason of alleged acts of negligence upon its *325 premises by the Maryland Casualty Company, who undertook to defend the South Jersey Port Commission and, in due course, made a settlement for and on behalf of the South Jersey Port Commission with Horace Kelly for the sum of $20,000. It is to recover the said sum of $20,000 that the plaintiff Maryland Casualty Company commenced this action.
The facts, supported by the evidence presented at the trial, do not seem to be seriously controverted. It was definitely established without contradiction that on the 2nd day of March, 1952, on the premises of the Camden Marine Terminal, Camden, New Jersey, an accident occurred and injuries were suffered by Horace Kelly, made a defendant in these proceedings. At the time of the accident Kelly was employed by one of the defendants, William H. Bair Trucking Company, as a truck driver, and during the course of his day's work he had driven a truck to the Camden Marine Terminal, operated by the South Jersey Port Commission, to be loaded with large rolls of paper, varying in weight from 2,500 lbs. to 4,500 lbs. William H. Bair, the owner of the trucking company, was present on the premises and his truck was being loaded by reason of his request, although he was not at the scene of the accident when it occurred. The loading operation was being performed by Horace Kelly, William Cherry (an employee of the defendant South Jersey Port Commission) and one Louis Constontini. Cherry was lifting rolls of paper by means of a lift truck and releasing the same on to the truck of William H. Bair Trucking Company. Kelly was within the truck and adjusting the rolls after they were placed thereon. During this loading operation it appears that Cherry released one of the rolls onto the truck in such manner as to cause the same to strike and injure Kelly, who was standing on the truck. To recover damages for the injuries sustained, Horace Kelly brought an action against William Cherry and the South Jersey Port Commission, alleging that the negligence of Cherry was the proximate cause of his injuries and asserting the liability of the South Jersey Port Commission on the theory of respondeat superior.
*326 It appears that at the time and place stated the plaintiff Maryland Casualty Company, pursuant to a contract of comprehensive public liability insurance, insured the South Jersey Port Commission against loss by reason of its alleged acts of negligence. The Maryland Casualty Company contends, and proof was given in support of the statement, that its insurance afforded no coverage to defendant William Cherry. It also appears that at the same time New Jersey Manufacturers Casualty Insurance Company (hereinafter referred for brevity as New Jersey Manufacturers) insured the William H. Bair Trucking Company against loss by reason of negligence in the ownership, maintenance or use of the truck previously mentioned. The insurance policy of the New Jersey Manufacturers contained a clause commonly known as the "omnibus clause," which is more fully set out hereinafter. This policy also contained a "loading and unloading" clause and an exclusion clause which will be more fully referred to herein.
William Cherry and South Jersey Port Commission made a demand upon New Jersey Manufacturers to assume their defense in the action brought by Horace Kelly, contending that they were covered by the omnibus clause of the policy issued by the New Jersey Manufacturers. The latter company refused to undertake such defense, whereupon the plaintiff Maryland Casualty Company, in accordance with its obligation under its policy, assumed the defense of the defendant South Jersey Port Commission against the claim made by Kelly, and during the pendency of the litigation settled the case by making payment to Kelly in the sum of $20,000. It is not in dispute and, in fact, it has been stipulated by the plaintiff and the defendant New Jersey Manufacturers, that neither the amount of the settlement nor the means or manner by which it was effected would be contested, and, further, that the liability of the South Jersey Port Commission arose through the relationship of respondeat superior between the South Jersey Port Commission and William Cherry, its employee. The defendant William Cherry has filed a cross-claim against the defendant New *327 Jersey Manufacturers. The plaintiff introduced in evidence a general release executed by Horace Kelly releasing the South Jersey Port Commission in consideration of $20,000. A stipulation of dismissal of the original suit as to South Jersey Port Commission was also introduced by plaintiff. The suit of Horace Kelly against William Cherry has not been terminated.
The principal questions raised by the defendants to this suit are as follows:
First: Do the terms and provisions of the policy issued by defendant New Jersey Manufacturers to defendant William H. Bair, trading as William H. Bair Trucking Company, by reason of its omnibus clause extend coverage to the South Jersey Port Commission and William Cherry, its employee, as an insured, although they are not the named insured?
Second: If it is decided that the insurance policy issued to William H. Bair, trading as William H. Bair Trucking Company, covers South Jersey Port Commission and William Cherry as "insured," do not exclusion provisions (d) and (e) prohibit any right to recovery to this plaintiff for any payment made to Horace Kelly for the injuries he sustained?
In order to decide the first question it will be necessary to examine those provisions of the policy issued by the defendant New Jersey Manufacturers which control the answer. They are as follows:
"III DEFINITION OF `INSURED.' The unqualified word `insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and also includes, under divisions 1 and 2 of the Definition of Hazards, any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured, and under division 3 of the Definition of Hazards, any executive officer of the named insured."
"5. PURPOSES OF USE DEFINED. (a) The term `pleasure and business' is defined as personal, pleasure, family and business use; (b) the term `commercial' is defined as use principally in the business occupation of the named insured as stated in Item 1 of the declaration, including occasional use for personal, pleasure, family and other business purposes; (c) use of the automobile for the purposes stated includes the loading and unloading thereof."
*328 Defendant New Jersey Manufacturers does not argue too strenuously concerning its liability under the omnibus clause as insurers of the defendants Cherry and South Jersey Port Commission. The status of the law on this point seems to be more or less settled and the facts would justify the conclusion that the defendant New Jersey Manufacturers is an insurer of these defendants. American Oil & Supply Co. v. United States Casualty Co., 19 N.J. Misc. 7, 18 A.2d 257 (Sup. Ct. 1940) (not officially reported); Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (Ct. App. 1952); United States Fidelity & Guaranty Co. v. Church, 107 F. Supp. 683 (D.C.N.D. Cal. 1952); Bituminous Cas. Corp. v. Travelers Ins. Co., 122 F. Supp. 197 (D.C.D. Minn. 1954); Maryland Casualty Co. v. Tighe, 29 F. Supp. 69 (D.C.N.D. Cal. 1939).
The decision in this case will, therefore, have to be predicated on the construction of the exclusion provisions of the policy as it affects the additional insured under the policy of the defendant New Jersey Manufacturers.
The particular provisions of this exclusion clause, which is referred to by the defendant New Jersey Manufacturers, are as follows:
"THIS POLICY DOES NOT APPLY:
(d) under coverages A and C to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law;
(e) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law; * * *."
It is undisputed that Kelly's employer carried workmen's compensation insurance pursuant to N.J.S.A. 34:15-1 et seq.
Research of counsel for all concerned has revealed no decision in New Jersey construing the exclusion provisions as applicable to the facts at hand.
Plaintiff contends that under the omnibus clause referred to herein the defendants Cherry and South Jersey Port Commission are the insured claiming the benefit of defendant *329 insurance company's policy, and the provisions of paragraphs (d) and (e) of the exclusion clause refers to them and not the named insured, and since Kelly was not an employee of either of them it was the duty of the defendant New Jersey Manufacturers to assume their defense. The plaintiff cites Pullen v. Employers' Liability Assurance Corp., 230 La. 867, 89 So.2d 373, 376 (Sup. Ct. 1956) for the statement:
"It thus becomes evident that the meaning given to the unqualified word `insured' in the omnibus clause does not necessarily apply in, and can hardly extend to, the exclusion clause, and that any attempt to construe the use of the word in one clause by reference to the other clause obscures and confuses, rather than clarifies, the meaning of both the word and the clause."
In effect, the plaintiff contends that the word "insured" in paragraphs (d) and (e) is meant to exclude the "named insured" from its application.
However, in Birrenkott v. McManamay, 65 S.D. 581, 276 N.W. 725 (Sup. Ct. 1937), a similar exclusion provision was construed as not protecting a driver using an automobile with the owner's permission, where the owner's employee was injured and the employee sued the driver; also see Continental Casualty Co. v. Pierce, 170 Miss. 67, 154 So. 279 (Sup. Ct. 1934); Associated Indemnity Corp. v. Wachsmith, 2 Wash.2d 659, 99 P.2d 420, 127 A.L.R. 531 (Sup. Ct. 1940).
Plaintiff submits many authorities for the position it assumes in the construction of the exclusion features of the policy of defendant New Jersey Manufacturers. See Pullen v. Employers Liability Assurance Co., supra; Pleasant Valley Lima Bean Growers, etc. v. Cal-Farm Ins. Co., 298 P.2d 109 (Cal. Ct. App. 1956); New v. General Casualty Co. of America, 133 F. Supp. 955 (D.C.M.D. Tenn. 1955); Sandstrom v. Clausen's Estate, 258 Wis. 534, 46 N.W.2d 831 (Sup Ct. 1951); McMann v. Faulstich, 259 Wis. 7, 47 N.W.2d 317 (Sup. Ct. 1951); Kaifer v. Georgia Casualty Co., 67 F.2d 309 (9 Cir. 1933).
The defendant insurance company cites many cases for the principal contra the plaintiff. See Lumber Mutual *330 Casualty Insurance Co. of New York v. Stukes, 164 F.2d 571 (4 Cir. 1947); Webb v. American Fire & Casualty Co., 148 Fla. 714, 5 So.2d 252 (Sup. Ct. 1941); Pearson v. Johnson, 215 Minn. 480, 10 N.W.2d 357 (Sup. Ct. 1943); Continental Casualty Co. v. Pierce, supra; Gibbs v. Employers Mutual Liability & Ins. Co. of Wisconsin, 224 N.C. 462, 31 S.E.2d 377 (Sup. Ct. 1944); Birrenkott v. McManamay, supra; Vaughn v. Standard Surety & Casualty Co., 27 Tenn. App. 671, 184 S.W.2d 556 (Ct. App. 1944), certiorari denied by Supreme Court; Associated Indemnity Corp. v. Wachsmith, supra; Shawcroft v. Standard Accident Insurance Co. of Detroit, 177 Wash. 106, 30 P.2d 987 (Sup. Ct. 1934), and Standard Surety & Casualty Co. of New York v. Maryland Casualty Co., 281 App. Div. 446, 119 N.Y.S.2d 795, 798 (App. Div. 1953).
In Standard Surety & Casualty Co. of New York v. Maryland Casualty Co., supra, the defendant, who is the plaintiff in the case sub judice, was successful in maintaining a position which is opposite to the one it alleges here.
The facts which follow were astoundingly similar:
Dan-Bar Contracting Co., Inc., was the owner of a power shovel which had been operating on a job and which Dan-Bar desired to have returned to its own premises. On August 7, 1946 Dan-Bar orally hired one Carpenter to move the shovel. For this purpose Carpenter furnished a tractor-trailer outfit owned by him and designed for heavy moving. This hiring was on a per hour basis covering the tractor-trailer and a driver. The tractor-trailer was driven by Weedon, who drove to the place where the shovel was located. There the shovel was driven onto Carpenter's tractor-trailer under the shovel's own power by one Polmanteer, who was Dan-Bar's employee. Weedon then drove the tractor-trailer carrying the shovel to premises owned by Dan-Bar. At a point on these premises Weedon stopped the tractor-trailer, shut off the motor, alighted from the tractor, and placed skids in position so that the shovel could be driven off the trailer by Polmanteer. While Weedon was standing at the side of the trailer, Polmanteer climbed onto the shovel, started the motor and raised the shovel bucket from the back end of the trailer *331 where it had been resting during the transportation, and started to swing the shovel boom and bucket around so that the boom would be at right angles to the length of the trailer when the shovel was being driven off the trailer. In this process the shovel bucket dropped and struck Weedon, causing severe bodily injuries. Weedon's duties in the operation of the tractor-trailer included the return of the vehicle to Carpenter after the shovel had been unloaded. At the time of the accident Weedon was acting in the business of Carpenter, his employer, and Polmanteer in the business of Dan-Bar, his employer. Weedon was charged with transporting the shovel, via the tractor-trailer; Polmanteer with unloading the shovel after Weedon had placed the skids. At the time of the accident the plaintiff Standard Surety had issued to Dan-Bar a public liability policy covering its operations. The defendant Maryland had issued to Carpenter a comprehensive automobile liability insurance policy covering the tractor-trailer in question. Weedon thereafter sued Dan-Bar and Polmanteer for his bodily injuries. The defendant Maryland refused to defend Dan-Bar and Polmanteer in this action and the plaintiff Standard Surety, acting under its public liability policy insuring the defendant Dan-Bar, settled Weedon's action for the sum of $6,250, for which sum, together with the legal fees in the Weedon action, Standard Surety now claims the right to recover by subrogation, in accordance with the terms of its public liability policy.
After considering the facts, Justice Wheeler, who wrote the opinion for the court, said:
"The first question is whether or not Maryland must defend and indemnify Dan-Bar and Polmanteer against claims arising out of the stipulated injuries. The second question is that of the respective or proportionate liabilities of the two insurers. In addition to the allegations set forth above, the complaint alleges that the Maryland policy is the primary policy for the payment of any judgment in favor of Weedon. Not mentioned in the complaint is the subrogation clause in the Maryland policy which would entitle Maryland to be likewise subrogated to Dan-Bar's rights against Polmanteer or Dan-Bar's public liability insurer. The obvious complications arising from these allegations are important only in the event that the plaintiff is *332 successful in overcoming Maryland's defense that its policy specifically excluded the injury here.
Returning to the first problem, the effect of exclusion clause `(d)' in the Maryland policy, we find no precedent in this State. Appellant has urged that this court should adopt the interpretation of this clause which has been enunciated by the Wisconsin Supreme Court in Sandstrom v. Clausen's Estate, 258 Wis. 534, 46 N.W.2d 831, and followed in McMann v. Faulstich, 259 Wis. 7, 47 N.W.2d 317. The Wisconsin view of an exclusion clause nearly identical with that contained in the policy under consideration, is that `the insurer and the named insured have agreed that the latter shall not have insurance against claims brought by his own employees against him.' Sandstrom v. Clausen's Estate, supra, 258 Wis. 537, 46 N.W.2d 832.
Should we adopt this interpretation, the `omnibus coverage' provisions of the Maryland policy would extend the same protection to the additional, or unnamed insured. Thus, in the case before us Maryland should spring to the defense of Dan-Bar and Polmanteer in the action commenced by Weedon because Weedon was not an employee of either. We have not been so persuaded.
The exclusion clause was inserted in the policy for the benefit of the insurer, and, while we do not lose sight of the canon that the policy should be construed in favor of the insured, we believe the clause should not be so narrowly interpreted as to render it practically meaningless to the insurer. The purpose of the exclusion clause is to exclude certain risks or probabilities of injury which the insurer considered too great to cover. One of these risks was `bodily injury to * * * any employee of the insured.' The risk was not that an injured employee of an insured would sue or otherwise claim against his own employer, but that the employee of any user of the `insured' vehicle would be injured. The exclusion clause is concerned with the hazards to which the policy did not apply and it should be interpreted in terms of the injuries to be excluded, not in terms of the persons who are to be indemnified. This latter consideration is the concern of policy clause entitled `Definition of "Insured."'
The Wisconsin construction urged here completely emasculates the significance of the exclusion provisions as far as the insurer is concerned. If we adopt the reasoning of the Wisconsin court and read into the exclusion clause the limitation of that clause measured by situations arising after the injury (where the claim is brought against the injured's employer), we are in effect holding that the insurer has agreed not to defend or indemnify the named insured against claims arising out of injuries to his employees, but that the insurer will defend another insured against that very risk. To state the proposition is to recognize its fallacy. If not wholly inconceivable, it is certainly not reasonable that the insurer even remotely contemplated that its liability for the very risk excluded would depend upon the choice by the injured employee of the party to be made defendant.
The words used in the exclusion clause are not ambiguous; the parties went to the trouble in another clause of the policy to avoid any ambiguity in their use of the unqualified word `insured' by particularly *333 and precisely defining the same. For the reasons indicated, it is apparent that the unqualified term `insured' was employed purposefully and advisedly in the exclusion clause. Therefore, we would not be justified in qualifying the meaning of that term as agreed upon between the parties." (Emphasis added.)
Plaintiff contends that Standard Surety & Casualty Co. of New York v. Maryland Casualty Co., supra, was impliedly overruled by the Court of Appeals of New York in Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n, 305 N.Y. 243, 112 N.E.2d 273 (April 16, 1953). It appears, however, that the Supreme Court of New York denied an application for a rehearing of the Standard Surety case on May 27, 1953, 281 App. Div. 1075, 122 N.Y.S.2d 415, and no further appeal was concluded, 281 App. Div. 1069, 121 N.Y.S.2d 767.
The strenuous effort extended by both insurance companies in the case sub judice to justify their respective interpretations of the insurance policy in question justifies the observation that insurance underwriters have been slow to correct policy expressions which have been the subject of diverse interpretation in the many courts of this nation. This failure on their part has resulted in much confusion, as an examination of the many cases cited by all parties will reveal. Our Appellate Division, in Erie Railroad Co. v. American Automobile Ins. Co., 36 N.J. Super. 159 (1955), said:
"Although all ambiguities in language of policy are resolved in favor of insured, a rational judicial construction which affords a reasonably distinguishable meaning to all of policy's provisions is preferred to one which regards some as merely repetitious or inexplicable."
The reasoning applied by the appellate court in Standard Surety & Casualty Co. of New York v. Maryland Casualty Co., supra, appeals to me as logical, and for that reason I conclude that the complaint of the plaintiff should be dismissed with prejudice and the cross-claim of defendant William Cherry should likewise be dismissed.
Upon presentation of a judgment in conformity with this opinion, same will be signed.