CANADIAN INDEMNITY COMPANY, a corporation, and Alvin Kelly, Plaintiffs,

v.

STATE AUTOMOBILE INSURANCE AS-SOCIATION, a reciprocal exchange, Defendant.

Civ. No. 7846.

United States District Court
D. Oregon.

May 28, 1959.

---

Eric R. Haessler, Keane & Haessler, Portland, Or., for plaintiffs.

Robert T. Mautz, Mautz, Souther, Spaulding, Denecke & Kinsey, Portland, Or., for defendant.

EAST, District Judge.

Plaintiff Canadian Indemnity Company (Canadian) brings this action under the provisions of the Federal Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202.

Canadian is a corporation existing under and by virtue of the laws of the Dominion of Canada. Defendant State Automobile Insurance Association (State) is a reciprocal insurance exchange organized under the laws of the State of Iowa. One Kelly, a nominal plaintiff, is a citizen of Idaho. There is diversity of citizenship and the amount in controversy exceeds $3,000. 28 U.S.C.A. § 1336.

Defendant's motion attacking service of process has been heretofore resolved against it.[1]

1. "In the District Court of the United States for the District of Oregon

| | |
|---|---|
| "The Canadian Indemnity Company, a corporation, and Alvin Kelly, Plaintiffs, v. State Automobile Insurance Association, a corporation, Defendant. | Civil No. 7846 Opinion April 15, 1955 |

"Solomon, Judge:

"Plaintiffs filed this action for a declaratory judgment of the insurance coverage obligations of both the plaintiff and the defendant insurance companies.

"The complaint alleges that Harry Paulson filed an action against Alvin Kelly and others in a court of the State of California for his negligent injury by Alvin Kelly in an accident that occurred on September 18, 1953, in Idaho. Plaintiff, Canadian Indemnity Company, admits that Kelly is an additional insured under an excess coverage policy which it has issued and it is defending the action brought in the California court.

"Plaintiffs claim that Alvin Kelly is also an additional insured under a primary coverage policy issued by the defendant, State Automobile Insurance Association, a reciprocal insurance exchange organized under the laws of Iowa. The defendant has denied coverage and has refused plaintiffs' demand to participate in the defense of the California action. Plaintiffs, therefore, filed this action to obtain a declaration of the obligations of the defendant.

"Service of summons was made upon the defendant by serving three copies of the complaint and summons upon the Insurance Commissioner of Oregon in accordance with the provisions of § 749.050 Oregon Revised Statutes. The defendant moved to quash the service on the ground that this 'court lacks jurisdiction over the subject matter of the cause and over the person of this defendant.' Specifically, the defendant contends that as a reciprocal insurance exchange, it may only be sued in Oregon in accordance with the provisions of § 749.050 ORS, which it claims only permits actions to be brought against insurance exchanges in the county in which property insured under the policy is situated or where the injured person resides. Defendant, therefore, argues that since the accident occurred in the State of Idaho between parties none of whom are residents of Oregon and since the contract of insurance was not written in Oregon, this action may not be maintained here.

"The particular provisions of the statute upon which the defendant relies reads as follows:

"'* * * action may be brought in the county in which the property insured thereunder is situated or where the injured person resides, * * *'

Dual Manufacturing & Sales, Inc. (Dual), a Minnesota corporation, is engaged in the manufacture, sales, and transportation of heavy potato harvesting equipment. Ernst Brothers, Inc. (Ernst), a California corporation, is a dealer of potato harvesting equipment. Ernst's main office is located in California, but the company, for sales purposes, maintains, or did maintain at all pertinent times herein, a branch sales office at Heyburn, Idaho.

Pursuant to a prior agreement between Dual and Ernst, one Harry Paulson, a truck driver and employee of Dual, transported in September of 1953 two of Dual's potato combines and assorted parts from Minneapolis to Ernst's place of business in Heyburn. This equipment was carried upon a tractor and semi-trailer belonging to Dual. The tractor and trailer also carried unloading equipment consisting of a winch and boom poles which could be set up on the rear of the tractor and with which the trailer could be unloaded. Upon Paulson's arrival in Heyburn, C. Allenthorp, the manager of Ernst's Heyburn branch, directed one Alvin Kelly, an employee of Ernst, to assist Paulson with the unloading of the combines from the Dual truck. Kelly drove an Ernst truck with an A-frame containing a winch close to the Dual trailer so that the rear of the Ernst vehicle was in close proximity to and extending at a right angle from the side of the Dual trailer. From that position, Paulson, standing on the ground between the two trucks, attached a line from the Ernst truck's A-frame to a box of combine parts resting on the trailer bed of the Dual vehicle. Paulson then signalled Kelly, who had remained in the driver's seat of the Ernst truck, to move the Ernst truck ahead to tighten the winch line before lifting the box from the Dual trailer. Kelly moved the Ernst truck pursuant to Paulson's hand signals, and one box of parts, weighing approximately 400 pounds, was unloaded without

"Defendant interprets this language to deprive the state of jurisdiction under the facts above outlined. For this contention he relies on decisions from Kansas, Oklahoma, Missouri and Indiana. That these cases are of doubtful application appears to be recognized by the defendant by the following statement appearing in its memorandum:

"'Although the cases cited in this memorandum do not necessarily involve reciprocal insurance exchanges, they nevertheless involve service of process on foreign insurance companies * * *'

"Plaintiff concedes that the law in Oregon is contrary to the law of such states as to insurance corporations and that in State ex rel. Kahn v. Tazwell, 1928, 125 Or. 528, 266 P. 238, 59 A.L.R. 1436, the Oregon Supreme Court held that a transitory action against an insurance company is within the jurisdiction of the court although the parties are non-residents and the contract was executed outside the state. Defendant argues, however, that the Tazwell case involved an insurance corporation and even though the cases in Kansas, Oklahoma, Missouri and Indiana likewise involved insurance corporations, that we should apply the law of such states in dealing with a reciprocal insurance exchange in the State of Oregon and reject the law set forth in the Oregon Supreme Court decision.

"I do not agree with this line of reasoning. I am also of the opinion that the section of the statute which the defendant attempts to make jurisdictional merely relates to venue.

"Although not raised in defendant's motion, defendant in its reply brief raises the issue of *forum non conveniens*. I have carefully examined the excerpt from the recent case of Collins v. American Automobile Insurance Co. of St. Louis, D.C.S.D.N.Y.1955, 128 F.Supp. 228, quoted in defendant's brief in support of defendant's contention that this case should be dismissed, and I find that the facts and the reasoning when considered in the light of the facts in this case are compelling authority for a conclusion directly opposite to the one urged by defendant.

"Defendant's motions are therefore denied, and defendant shall have 10 days within which to file an answer."

mishap. Paulson then affixed the winch line from the Ernst truck to a second box of parts on the Dual trailer. Paulson then, by way of hand signals, command-ed Kelly to move the Ernst truck forward to tauten the line before lifting the second box. Kelly shifted into what he thought was low gear, but when he applied the power the Ernst truck backed up instead of proceeding ahead, and pinioned Paulson between the rear end of the Ernst vehicle and the side of the bed of the Dual trailer. At the time of the accident, the Dual trailer was motionless and the tractor motor was not running.

Paulson sustained injuries as a result of this accident, and to gain redress for his hurt filed an action against Ernst and Kelly in the Superior Court of Kern County, State of California. Canadian defended, State refused a tender of defense, but eventually both insurance concerns settled the Paulson claim for $26,-000 by way of a nonprejudice agreement, each paying one-half of this amount until the ultimate liability could be determined in this suit.

On the date of the injury to Paulson, there was in full force and effect a comprehensive insurance policy No. 25CPL 2035, issued by Canadian to Ernst as its named insured, for $100,000 for bodily injury suffered by one person in an accident. It is conceded by Canadian that Kelly is an additional insured under the omnibus definition of "insured" in that policy. However, the Canadian policy contains what is commonly referred to as an "excess insurance" clause.[2]

On the same date there was also in full force and effect an insurance policy No. M634579, issued by State to Dual as its named insured for $50,000 for bodily injury suffered by one person in an accident. The State policy is of a type commonly referred to as a "pro rata" policy.[3] This policy is one for automobile and property damage only.

State's Contract With Dual:

"For purposes of diversity jurisdiction a federal court is, 'in effect, only another court of the State.'" Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 659, 91 L.Ed. 832.

In diversity cases the Federal courts must follow the conflict of laws and rules prevailing in the states in which they sit. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

The insurance policy issued by State to Dual shows that Dual's office is located at St. Paul, Minnesota, and that State's main office is located in Des Moines, Iowa. The policy is countersigned at St. Paul by an agent of State. There being nothing further in the policy or the record of this case, it must be assumed that the policy became effective on the date specified at St. Paul, Minnesota.

"When an insurance policy becomes effective upon delivery and is sent by the Company to its agent and by him delivered to the assured, the place of contracting is where it is thus delivered to the assured."

---

2. "If at the time of an accident there is any other insurance *available* to the insured * * * there shall be no insurance afforded hereunder as respects such accident except that if the applicable limit of liability of this policy is in excess of the applicable limit provided by the other insurance available to the insured this policy shall afford excess insurance over and above such other insurance * * * to the applicable limit of liability afforded by this policy. * * * Insurance under this policy shall not be construed to be concurrent or contribut-

ing with any other insurance which is *available* to the insured." [Emphasis added]

3. "If the insured has other insurance against a loss covered by this policy the Association shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all *valid and collectible* insurance against such loss." [Emphasis added]

76

Restatement of Conflict of Laws, § 318 (Ed.1934).

This rule is in accordance with usual insurance custom, wherein a policy, though signed by the company, is not intended to be effective until countersigned and delivered to the insured, the agent being the individual with whom the insured actually deals.

It appears that the Oregon court has not been squarely faced with the construction of an out-of-state insurance policy. However, it has said, in a case where this problem was dealt a glancing blow:

"It appears to be the rule that where the parties to an insurance contract are in different jurisdictions, the place where the last act is done, which is necessary to the validity of the contract, is the place where the contract is entered into." Lane v. Brotherhood of Locomotive Enginemen & Firemen, 1937, 157 Or. 667, 685, 73 P.2d 1396, 1403.

Speaking of contracts generally, the Court has said:

"It has never been better described than it was incidentally by Chief Justice Marshall in Wayman v. Southard, 10 Wheat. 1, 23 U.S. 1, 48, 6 L.Ed. 253, where he defined it as a principle of universal law, as follows: 'The principle that in every forum a contract is governed by the law with a view to which it was made.'" Sterrett v. Stoddard Lumber Co., 1935, 150 Or. 491, 505, 46 P.2d 1023, 1029.

In an earlier case we find:

" * * * another principle of law, admitted by all courts, the *lex loci contractus* must govern as to the validity, interpretation, and construction of the contract; * * *" Jamieson v. Potts, 1910, 55 Or. 292, 300, 105 P. 93, 95, 25 L.R.A.,N.S., 24.

"The general rule with regard to the effect of a contract is that it is governed by the law of the place of contracting." Getlin v. Maryland

Cas. Co., 9 Cir., 196 F.2d 249, 250, 50 A.L.R.2d 73.

Thus, it appears that the law of the State of Minnesota must control the construction and application of the policy issued to Dual by State.

Plaintiff Canadian contends that its named insured, Ernst, and its additional insured, Kelly, are also covered as additional insureds under the State policy covering Dual. This proposition is based upon a literal construction of the State policy, wherein it is stated:

"Definition of Insured.

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.

"Use of the automobile for the purposes stated includes the loading and unloading thereof."

Applied to the instant facts, Kelly was engaged in unloading the Dual truck which is listed in and covered by the State policy, albeit Kelly, at the time of the injury, was operating another vehicle, the Ernst truck with the A-frame. Ernst was legally responsible for any negligent conduct on the part of Kelly, via respondeat superior. It necessarily follows that both were covered by the State policy at the time of the accident according to the terms of that policy. Unloading is using, and permissive use is all that is required to bring one into coverage. There has been no issue joined as to permission.

This novel construction, while undoubtedly broader than that anticipated by State when it used this language, is nevertheless the law of the State of Minnesota, as expressed in Bituminous Cas. Corp. v. Travelers Ins. Co., D.C.Minn. 1954, 122 F.Supp. 197. The Bituminous case is essentially on all fours with the instant facts. There, Wegman was

found in a state action to have negligently operated a power shovel, injuring Williams, the driver and owner of a truck being loaded by the use of a power shovel. Travelers Insurance Co. had issued an automobile liability policy on the Williams' truck. It was held in that cause that Wegman was an additional insured within the meaning of the Travelers' policy by virtue of the loading and unloading clause.

In the current cause, after an examination of the evidence before the Court, certain facts seem controlling:

1. Neither Paulson nor the stationary Dual vehicle contributed to Paulson's injury; and

2. The Ernst vehicle had a defective transmission, and this defect was an active instrumentality in the resulting hurt to Paulson.

The Court is satisfied that both Ernst and Kelly had knowledge of the defective transmission. Ernst's knowledge is imputed from the undoubted personal knowledge of Allenthorp, the manager of the Heyburn branch. Kelly also knew of the defect, as the evidence indicates he had driven the Ernst vehicle previously and had experienced difficulty shifting. Keeping in mind the fact that the Ernst truck was used extensively in connection with a winch mounted thereon, the Court finds that the failure of Ernst to have the shifting mechanism repaired for a period of over a year constitutes an unreasonable risk of harm to anyone who might be reasonably expected to be exposed to the use of this truck and winch in the course of Ernst's business. Certainly Paulson was within the risk. The conduct of Ernst in failing to repair the shifting mechanism constituted negligence. This finding of negligence is not insulated by the fact that Kelly, with knowledge of the defect, was operating the truck at the time of the injury. It has been held that a person should anticipate that workmen who are furnished with defective appliances may be expected to try to make them work. Liberty Mutual Ins. Co. v. Great Northern Ry. Co., 1928, 174 Minn. 466, 219

N.W. 755. Also of value and appropriate to the instant facts is the rule found in the Restatement of Torts Sec. 449, Ed. 1934, which reads:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." Cited with approval in Herring v. Springbrook Packing Co., 1956, 208 Or. 191, 199, 299 P.2d 604, 300 P.2d 473.

Ernst's negligence does not preclude a finding of negligence on the part of its employee, Kelly. Kelly knew of the defective condition of the truck's shifting apparatus, but in his apparent zeal to please his employer he undoubtedly thought that by careful manipulation he was capable of compensating for this defect. The facts indicate that in this particular instance his performance fell short of his assumed capabilities. Kelly's conduct amounts to something more than a mere error in judgment, it amounts to knowingly placing Paulson within a sphere of unreasonable risk of harm. There is a line beyond which a workman may not go in using potentially dangerous and defective equipment, even though such use is directed by his employer. If one does cross this diffused line of reasonableness, he does so at his personal peril. This is such a case. Kelly's negligence, of course, does not relieve Ernst of its own independent negligence. Ernst may also be held liable under the separate theory of respondeat superior.

As to apportionment of damages upon these facts, Dean Prosser says:

"Certain results by their very nature are obviously incapable of any practical division. Death is such a result. * * * No ingenuity can suggest anything more than a purely arbitrary apportionment of such harm. Where two or more causes combine to produce such a single

result, incapable of any logical division, each may be a substantial factor in bringing about the loss, and if so, each may be charged with all of it. * * * The duties which are owed to the plaintiff by the defendants are separate, and may not be identical in character or scope, but entire liability rests upon the obvious fact that each has contributed to the single result, and that no rational division can be made. * * * It is not necessary that the misconduct of the two defendants be simultaneous. One defendant may create a situation upon which the other may act later to cause the damage." Prosser on Torts, 226, 227 (Ed. 1955).

The decision of the Minnesota Supreme Court in Gamble-Skogmo, Inc. v. Saint Paul Mercury Indem. Co., 1954, 242 Minn. 91, 64 N.W.2d 380, merits careful analysis in order to understand why the allocation of fault between Kelly and his employer Ernst is important if not controlling. Gamble-Skogmo was engaged in the business of merchandising farm equipment through a chain of retail stores. By prior arrangement, a truck owned by an employee of Gamble-Skogmo was used to deliver equipment from a retail outlet to the purchasers' premises. On the day the injury occurred, this truck was driven by an employee of Gamble-Skogmo who had transported a farm implement known as a "Cockshutt swather" to the farm of a customer, the Dietz brothers. Upon arrival at the farm, another employee of Gamble-Skogmo, Lindberg, who had accompanied the truck driver, attempted to reassemble the disconnected swather hitch and tilting bar in order to place the machine in operating condition. One Lyngstad, an employee of the Dietz brothers, was assisting Lindberg in this task when the tilting bar lever suddenly became released, striking and injuring Lyngstad. At the time of the accident the truck was not in motion nor being operated in any way, and the swather was still located upon the bed of the truck. Lyngstad brought an action against Lindberg and Gamble-Skogmo in a Minnesota State Court wherein it was determined that the cause of the accident was the failure on the part of Gamble-Skogmo to give adequate and proper instructions to Lindberg as to the proper way in which to assemble the swather hitch and tilting bar and that Lindberg himself was not guilty of any negligence at the time and place of the happening of the accident. Gamble-Skogmo at the time of the accident was the named insured in both a comprehensive general liability policy issued by Mercury and in a comprehensive automobile liability policy issued by American.[4] American paid without prejudice the Lyngstad judgment and received an assignment of Gamble-Skogmo's claim against Mercury. American then brought a declaratory suit in the name of Gamble-Skogmo against Mercury for a determination of which insurance carrier would be ultimately responsible for payment of the Lyngstad judgment.

The American automobile liability policy included coverage for bodily injury sustained by any person and arising out of the ownership, maintenance, or use of any automobile, including the loading and unloading thereof. As before stated, the Mercury policy was a comprehensive general liability policy. The Minnesota court assumed without so deciding that unloading operations as defined in the American policy were in progress at the time of the accident. After stating the issue,[5] the court held

4. The Court recognizes that in Gamble-Skogmo the company was the named insured under both policies, while in the current cause the interested insurance companies insured separate named insureds. In the determination of the matters presented this Court, the above distinction does not subtract from the persuasive logic of Gamble-Skogmo.

5. "The difficult problem which such a division of risks has created in the instant case is to the best of our knowledge one of first impression involving an

that the peril involved in failing to adequately instruct Lindberg regarding the assembling of the equipment involved a general business liability risk for which insurance coverage was afforded by the terms of the Mercury policy:

"It is clear that standing alone the risk of failing to properly and adequately instruct employees regarding their duties during employment is a general business risk unrelated to the use or unloading of an automobile. The mere fact that the negligently omitted instructions concerned one step in the proper manner of performing a task necessary to unloading an object from the truck does not transform an otherwise general liability risk into an automobile hazard. The negligent act causing the injury to Lyngstad was removed from the unloading operations both in the sense that it occurred prior to the accident and also some distance away from the scene of the accident. Any connection it does have with the Jensen truck or the unloading operations therefrom is too remote to allow us to hold that the injurious effect it caused arose out of the use or unloading of an automobile within the terms of the * * * American policies."

The Minnesota court further held that as Lindberg was not negligent by reason of his conduct during the unloading operation, American was not liable for any portion of the Lyngstad judgment.

 The purpose of this extensive review of the Gamble-Skogmo case will become apparent when it is noted that the State policy herein is one of automobile liability, whereas the Canadian policy is one of comprehensive bodily injury liability, including automobile coverage, which is in effect a comprehensive general liability policy even somewhat broader than the Mercury policy issued to Gamble-Skogmo. The plain implication found in Gamble-Skogmo is that the negligence of the employer-insured in failing to properly instruct its employee, being the sole cause of the injury, is not covered by an automobile liability policy, but that the result would be otherwise had the injury been caused by either the sole or participating negligence of the employee Lindberg in assembling the equipment during the course of the unloading operation.

 The Court has found that Kelly was engaged in unloading the Dual truck and, thus, under the rationale of Bituminous Cas. Corp. v. Travelers Ins. Co., supra [122 F.Supp. 198], Kelly is an additional insured within the "loading and unloading" clause of the State policy with Dual, and State is responsible for Kelly's independent concurring negligence. The State policy also provides coverage for Ernst as to Ernst's liability for Kelly's negligence via respondeat superior. Canadian also protects Ernst as a named insured and Kelly as an additional insured. The hurt suffered by Paulson herein resulted from the concurring negligence of Kelly and Ernst, there being an obvious causal connection between each party's negligence and the resulting harm. Therefore, in light of Gamble-Skogmo, the State policy does not provide coverage for the concurring negligence of Ernst in failing to keep the Ernst truck in proper repair. This negligent act (failure to repair) was removed from the unloading operations both in the sense that it occurred prior to the accident and also some distance away from the scene of the accident. Any connection it does have with the Dual truck or the unloading operations is

---

interpretation of the standard type automobile liability policy and in particular the clause providing coverage for injuries arising out of the loading and unloading of an automobile. Its uniqueness stems from the fact that the accident in question was not caused by any negligent act occurring at the time and · place of the process of unloading but rather by an independent negligent act ·which, though so removed from the unloading process, nevertheless, had some connection with the unloading process and the effect of which was manifested during the course of the actual unload-·ing operations."

too remote under the Gamble-Skogmo exception to allow the Court to hold that the injurious effects it caused arose out of the use or unloading of an automobile with the terms of the State policy with Dual. Thus, Canadian under its comprehensive policy is the sole insurer as to the prior independent negligence (failure to repair) of Ernst.

As both Canadian and State were responsible for the concurring torts of their respective insureds, this Court finds mutual liability and denies relief to either party. The above finding is subject to other considerations raised by each party which Canadian and State contend will absolve them of liability.

■ As is usual in an 'insurance situation, the defendant State insists that Kelly and Canadian did not notify the defendant of the accident, as required by the State policy. Under ordinary circumstances it is well settled that an insurer is entitled to reasonable notice of an injury or other transaction which might be covered under a liability policy. Hoffman v. Employer's Liability Corp., 146 Or. 66, 29 P.2d 557.

■ Under the rationale of United States Fidelity & Guaranty Co. v. Church, D.C., 107 F.Supp. 683, it is difficult to see how State is harmed. State has consistently denied coverage. Kelly, because of the complicated "loading and unloading" clause, was understandably ignorant of State's coverage. When the possibility of State's liability became known to Kelly, due notice was given in sufficient time so as not to prejudice State's rights herein.

■ State asserts the further technical defense that the plaintiff Kelly, at the time of the said accident, was an employee of an organization within the following exclusion of the State policy:

" * * * The insurance with respect to any person or organization other than the named insured does not apply:

"(a) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, *sales agen-cy*, service station or public parking place, with respect to any accident arising out of the operation thereof; * * * " [Emphasis supplied.]

The basis of defendant's contention rests on the proposition that the exclusion is applicable to Kelly because Ernst is a sales agency of potato harvesting equipment. The above exclusion is a common one appearing in many policies, and even codified into State statutes. Annotation 57 A.L.R.2d 556, et seq. From an extensive review of the cases, the Court is satisfied that the clause is primarily concerned with the bailment of a vehicle to a parking lot, repair shop, or similar business. This Court will take judicial notice of the fact that a great majority of the commercial trucks as involved herein (the Dual vehicle) are involved in transporting products to some commercial sales agency. If State's defense were allowed, it would nullify insurance on many of these commercial trucks, a situation which this Court cannot conceive was the intention of the parties, nor included within the above exclusionary clause.

After submission of this matter, defendant State was given leave to submit the additional contention that it would not be liable on its policy covering Kelly as an additional insured because Paulson, the person injured by Kelly, was covered by the Minnesota Workmen's Compensation Law, M.S.A. § 176.01 et seq. Defendant relies upon the following paragraph in the State policy:

"This policy does not apply:

"(d) under Coverages A (bodily injury liability) and C, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law."

As Kelly and Ernst were insureds under defendant's policy, does the above exclusion exclude said coverage? The basis

of both parties' contentions concerns the interpretation to be given to the word "insured" in the above exclusion clause. An extensive annotation covering the position of both parties is found in 58 A.L.R.2d 78, at page 97, et seq.

▮ Canadian submits that the above exclusion applied only to a particular insured when the insured's employee is making a claim against him, and the employer has workmen's compensation insurance, or is required to have it by state law. There must be a master and servant relationship between the employee making the claim and the person or corporation against whom the claim is made, whether he be a named insured or an additional insured under the policy, in order that the above employee exclusion may be invoked. State contends that the exclusion was not meant to be thus limited, but encompasses a situation as here involved, where an employee (Paulson) of the named insured (Dual) is injured, and the employee (Paulson) prosecutes an action against an additional insured (Kelly). The Court has carefully considered State's contention in the light of Standard Surety & Casualty Co. v. Maryland Cas. Co., 281 App.Div. 446, 119 N.Y.S.2d 795; and Maryland Casualty Co. v. New Jersey Mfrs. Cas. Ins. Co., 43 N.J.Super. 323, 128 A.2d 514 (reversed 48 N.J.Super. 314, 137 A.2d 577), and finds the arguments advanced therein neither persuasive nor controlling. With primary concern directed toward the status of the individual at the time he was injured, i.e., whether the injured party was a member of the public in relation to the tort feasor, or whether a master and servant relationship existed between the tort feasor and the injured party, the Court finds the exclusionary clause in this cause inapplicable.

The basis of this holding is clearly set out in Maryland Casualty Co. v. New Jersey Mfrs. Ins. Co., supra, reversing 128 A.2d 514, relied upon by State, where the Court held in 137 A.2d at page 583:

"The clear intent of the exclusionary language of the policy (speaking of an exclusionary clause identical to the one before this Court) was to relieve (State) of responsibility under the policy where an employee of an insured was making a claim against his employer in connection with injury covered by workmen's compensation. We hold that the reference to 'the insured' in the quoted exclusionary clause applies only to the particular insured, whether the named insured or an additional insured under the omnibus clause, whose employee is suing him on account of the injury in question notwithstanding that the injury was compensable through workmen's compensation payments. Where, as here, an employee of the named insured was not suing the named insured, who had nothing to do with the negligent action which gave rise to the employee's claim, but sued an additional insured who was not his employer, the obvious purpose of the exclusionary clauses is not implicated." [Parenthetical language supplied.]

▮ Two final inquiries remain to be made. First, plaintiff Canadian asserts that the coverage afforded by its indemnity policy was excess to the primary coverage provided by the State policy. Both policies' applicable clauses are set out in the footnotes.[6] Both clauses are concerned with other available insurance. As this Court has found Canadian and State insure separate distinct interests, Canadian being the sole insurer of the independent negligence of Ernst, and State being responsible for the actions of Kelly, it follows that this contention must fail. On the same rationale, the Court dismisses Canadian's alternative contention that the settlement paid Paulson, the injured party, be prorated.

Counsel for the defendant will submit appropriate findings. Each party to bear its own costs.

6. See footnotes 2 and 3.